IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JENNY BIRMINGHAM,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-22-450-STE |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Commissioner of the Social Security** | ) |
| **Administration,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

### I.     PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 10-25). The Appeals Council denied

Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 21, 2017, the alleged onset date. (TR. 12). At step two, the ALJ determined Ms. Birmingham suffered from the following severe impairments: major depressive disorder, posttraumatic stress disorder, morbid obesity, lumbago, type II diabetes mellitus, and gout. (TR. 12). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 13).

At step four, the ALJ concluded that Ms. Birmingham retained the residual functional capacity (RFC) to:

> [P]erform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is able to lift or carry, push or pull twenty pounds occasionally and ten pounds frequently. The claimant can sit for six hours out of an eight-hour day and stand or walk a combined total of six hours out of an eight-hour day. The claimant can perform simple and multi-step detailed tasks that require occasional judgment however, tasks should not include in depth or multi-layer decision making. The claimant can concentrate for two hours at a time and persist for an eight-hour workday. The claimant can interact appropriately with coworkers, supervisors, and members of the public. The claimant can adapt to a work setting where the work demands are generally stable.

(TR. 14-15).

With this RFC, the ALJ concluded that Plaintiff was capable of performing her past relevant work. (TR. 24). As a result, the ALJ concluded, at step four, that that Ms. Birmingham was not disabled. (TR. 25).

### III. ISSUE PRESENTED

On appeal, Ms. Birmingham alleges a lack of substantial evidence to support the RFC and the ALJ's evaluation of Plaintiff's subjective allegations. (ECF No. 16:5-14; 21:1-3).

### IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. THE RFC IS SUPPORTED BY SUBSTANTIAL EVIDENCE

As stated, the ALJ found that Plaintiff had the RFC to:

> [P]erform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is able to lift or carry, push or pull twenty pounds occasionally and ten pounds frequently. The claimant can sit for six hours out of an eight-hour day and stand or walk a combined total of six hours out of an eight-hour day. The claimant can perform simple and multi-step detailed tasks that require occasional judgment however, tasks should not include in depth or multi-layer decision making. The claimant can concentrate for two hours at a time and persist for an eight-hour workday. The claimant can interact appropriately with coworkers, supervisors, and members of the public. The claimant can adapt to a work setting where the work demands are generally stable.

(TR. 13-14). Ms. Birmingham argues that the physical and mental RFC findings lack substantial evidence and that the RFC failed to account for missed days of work which would preclude her from performing substantial gainful activity. (ECF No. 16:6-10). The Court disagrees.

### A. Plaintiff's Physical RFC is Supported by Substantial Evidence

Social Security regulations define "light" work in the following way:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b) & 416.967(b). Additionally, Social Security Regulation 83–10 defines the ability to perform "the full range of light work" as being able to "stand[ ] or walk[ ], off and on, for a total of approximately 6 hours of an 8–hour workday." SSR 83-10, 1983 WL 31251, at *6. Plaintiff argues that the ALJ's physical RFC determination

that Plaintiff could perform "light" work lacked substantial evidence because "[n]one of the Plaintiff's treating physicians issued such an opinion." (ECF No. 16:6). The Court rejects Plaintiff's argument and finds that the physical RFC was supported by substantial evidence.

An individual's RFC is defined as "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). The ALJ is charged with determining a claimant's RFC "based on all the relevant evidence in [a claimant's] case record." 20 C.F.R. §§ 404.1545(a) & 416.945(a). Categories of evidence, in turn, include:

- objective medical evidence (medical signs laboratory findings);

- medical opinions (statements from a medical source(s) regarding what a claimant can still do despite impairments and related limitations);

- other medical evidence (evidence from a medical source that includes judgments about the nature and severity of a claimant's impairments, medical history, clinical findings, treatment prescribed, prognosis);

- evidence from non-medical sources (statements from nonmedical source about any issue relevant to the disability claim); and

- prior administrative findings (findings from federal and state agency medical and psychological consultants made at the initial or redetermination levels of review).

20 C.F.R. §§ 404.1513(a)(1)-(5) & 416.913(a)(1)-(5).

In concluding that Plaintiff could perform "light" work, the ALJ cited:

- findings from consultative examiner, Dr. Raymond Azadgoli who reported that on September 14, 2020, Plaintiff "ambulated with a stable and safe gait and an appropriate speed, without the use of any assistive device;"

- findings of "normal" gait and station at examinations on July 13 and 23, 2021;

- MRI findings from October 4, 2021 revealing "no acute abnormality;" and

- Prior administrative findings from State Agency physicians Drs. Carla Werner and Herbert Meites, who opined that Plaintiff was capable of performing "light work."

(TR. 18, 19, 24). Indeed, the record supports the ALJ's findings. *See* TR. 76-77, 87-88, 106-108, 125-127, 419, 691, 696, 774. In addition to evidence cited by the ALJ, other evidence in the record reveals that the RFC was supported by substantial evidence.

For example, although Plaintiff visited the emergency room on July 15, 2016 complaining of right knee pain, an examination revealed no loss of motion, no muscle weakness, no decreased range of motion, and veinous doppler testing on Plaintiff's right leg showed no evidence of deep vein thrombosis. (TR. 357, 362). Plaintiff reported again to the emergency room on July 22, 2016 complaining of the same pain, but x-rays were negative regarding the source of Plaintiff's pain. (TR. 367). Ms. Birmingham was given crutches for ambulation and instructed to follow up if necessary. (TR. 367).

On September 4, 2017, Plaintiff presented to the emergency room requesting a doctor's note so that she could go back to work. (TR. 370). At that visit, Ms. Birmingham complained of "constant bilateral foot pain," which was confirmed by notations of "tenderness" to each foot, but an examination revealed normal range of motion in both feet, and a physician's notation that Plaintiff's symptoms were "stable." (TR. 370-374). Ultimately, it was Ms. Birmingham's request to be cleared to return to work, for which the emergency room physician complied, by writing her a note. (TR. 374).

On October 20, 2017, Plaintiff reported to the emergency room complaining of right foot pain. (TR. 393). Examination revealed right foot tenderness, but normal range

of motion. (TR. 395). A CT scan of Plaintiff's right foot at that time revealed "minimal ankle and plantar hindfoot subcutaneous edema." (TR. 397, 399). On June 8, 2020, Plaintiff visited the emergency room complaining of left toe pain, but examination revealed "normal gait." (TR. 405). Finally, a discharge note from a mental health provider dated April 15, 2019, stated that Plaintiff was moving out of state, had possibly found employment, and that her biggest liabilities were, in her own words, "my lack of motivation and I need to find a job." (TR. 712).

It may be true that none of Plaintiff's "treating physicians" opined that she was capable of performing "light" work. But the record, which includes medical opinions, prior administrative findings, and other medical evidence provide substantial evidence to support the ALJ's finding otherwise. *See White v. Berryhill*, 704 F. App'x 774, 780 (10th Cir. 2017) (RFC was supported by substantial evidence, including evidence from a consultative examiner); *Leach v. Astrue*, 470 F. App'x 701, 704, 2012 WL 75962, at *3 (10th Cir. 2012) (affirming district court's holding that opinions from State Agency physicians provided substantial evidence for the RFC); *see also Moore-Radcliff v. Berryhill*, No. CIV-17-1173-STE, 2018 WL 2293964, at *5 (W.D. Okla. May 18, 2018) ("the RFC can still be upheld as supported by substantial evidence if it finds support in the remaining evidence—the opinions of the State Agency physicians.").

### B.   Plaintiff's Mental RFC is Supported by Substantial Evidence

As stated, the ALJ determined that Ms. Birmingham had the mental RFC to:

- Perform simple and multi-step detailed tasks that require occasional judgment however, tasks should not include in depth or multi-layer decision making;

7

- Concentrate for two hours at a time and persist for an eight-hour workday;

- Interact appropriately with coworkers, supervisors, and members of the public; and

- Adapt to a work setting where the work demands are generally stable.

(TR. 14-15). Plaintiff argues that the mental RFC lacks substantial evidence, based on "objective mental testing" in the form of:

- A Global Assessment of Functioning (GAF) score of 35;

- A "PHQ-9" score of 18;

- A PCL-5 score of 33; and

- A Montreal Cognitive Assessment (MoCA) score of 24.

(ECF No. 16:7). The Court disagrees.[1]

### 1. The GAF Score

"The GAF is a 100–point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and

---

[1] Plaintiff also alleges that the RFC lacks substantial evidence based on "substantial evidence from several mental health sources (Hope Community, Grand Lake and Dr. Danaher) of Plaintiff's mental disability." (ECF No. 16:7-8). But aside from the "objective mental testing" which was performed by medical professionals at Grand Lake Mental Health Center and Dr. Robert Danaher, Plaintiff does not point to any specific evidence from either Hope Community, Grand Lake, or Dr. Danaher in support of her claims and "the Court will not attempt to guess as to the plaintiff's grounds for objection or to scour [the] evidentiary record for every conceivable error." *Jacqueline M. L. v. Kijakazi*, No. 21-CV-400-CDL, 2023 WL 2713993, at *3 (N.D. Okla. Mar. 30, 2023).

Plaintiff also states: "the ALJ's finding that she can interact with the co-workers, supervisors and the public is erroneous and is not based on substantial evidence. Plaintiff has stress in dealing with her family members, she had issues with her boyfriend." (ECF No. 16:8). The Court reads Ms. Birmingham's statement as an attempt to re-weigh the evidence—apparently Plaintiff believes that the ALJ should have considered Plaintiff's relationships with her boyfriend and family differently. But as stated, the Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *See supra*, *Vigil v. Colvin*, 805 F.3d at 1201 (internal quotation marks omitted).

occupational functioning." *Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1162 n. 1 (10th Cir. 2012). "While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy." *Richards v. Colvin*, 640 F. App'x 786, 791 (10th Cir. 2016) (citation omitted). Ms. Birmingham alleges a lack of substantial evidence for the mental RFC, by pointing to a single GAF score of 35 which had been authored by a medical professional at Grand Lake Mental Health Center (Grand Lake) on March 26, 2020. (ECF No. 16:7). Plaintiff makes no argument connected to this test, other than giving the DSM-IV's interpretation of Plaintiff's score. See ECF No. 16:7. The score, however, was not accompanied by narrative findings or explanations. *See id.*

In the decision, the ALJ gave a detailed summary of Plaintiff's mental health records, including the records from Grand Lake, although admittedly, the ALJ failed to specifically mention the GAF score of 35. (TR. 21-23). Although lacking a solid argument, Ms. Birmingham appears to believe that the ALJ erred by failing to discuss the score because it indicated an inability to work, contrary to the ALJ's findings. (ECF No. 16:7). The Court disagrees for two reasons.

First, Ms. Birmingham has failed to show that the ALJ ignored the GAF score. The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater,* 79 F.3d 1007, 1009–1010 (10th Cir. 1996). The ALJ discussed the findings from practitioners at Grand Lake. (TR. 90). Error does not exist based on an ALJ's failure to explicitly mention each piece of evidence contained in all of the records from Grand Lake. *See Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered

9

all of the evidence, but an ALJ is not required to discuss every piece of evidence."). Moreover, the ALJ stated that he considered the entire record,[2] and the Court must take the ALJ at his word. *See Wall v. Astrue*, 561 F.3d 1948, 1970 (10th Cir. 2009).

Second, and for two reasons, the Court concludes that the GAF scores were not significantly probative. First, a low GAF score, standing alone, is insufficient to prove disability because "the Social Security Administration does not consider GAF scores to have a direct correlation to the severity requirements in [the] mental disorders listings, and the [ ] *Diagnostic and Statistical Manual of Mental Disorders* has discontinued its use because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *Rose v. Colvin*, 634 F. App'x. 632, 636 (10th Cir. 2015) (internal quotation marks and citations omitted). Although Plaintiff cites the DSM-IV's use of GAF scores, the current edition of the DSM, the DSM-V (published in 2013) discontinued use of such scores.

Second, the records contained no explanation regarding how the GAF score had been calculated, nor did any medical professional link the scores to any particular symptoms or state whether they impacted Ms. Birmingham's ability to work. *See* TR. 574. Although Plaintiff seems to believe that that the score indicated an inability to work, her theory is not entirely self-evident. *See Butler v. Astrue,* 412 F. App'x 144, 147 (10th Cir. 2011) (noting that GAF scores that are not linked to any work-related limitations are not particularly helpful and cannot alone determine disability); *Eden v. Barnhart,* 109 F. App'x 311, 314 (10th Cir. 2004) (noting that because a GAF of 50 "may not relate to [Plaintiff's]

---

[2]   (TR. 11).

ability to work, the score, standing alone, without further explanation, does not establish an impairment severely interfering with an ability to perform basic work activities."); *Lee v. Barnhart,* 117 F. App'x 674, 678 (10th Cir. 2004) (noting that an unexplained GAF score might indicate an impairment "solely within the social, rather than the occupational, sphere").

Because the GAF scores were not significantly probative and the ALJ stated that he considered all of the evidence in the record, the Court rejects Plaintiff's contention that the ALJ erred in considering the score and consequently, that the mental RFC lacked substantial evidence.

### 2. The PHQ-9 Score

The Patient Health Questionnaire-9 (PHQ-9) is a multipurpose instrument for screening, diagnosing, monitoring, and measuring the severity of depression.[3] The PHQ-9 rates the frequency of the symptoms, which factors into the scoring severity index.[4] The total of all 9 responses from the PHQ-9 aims to predict the presence and severity of depression.[5] A score of 18, like Ms. Birmingham's, indicates "moderately severe depression, as noted by Plaintiff. *See* ECF No. 16:7 ("The plaintiff's score on the PHQ-9 was 18 indicating moderate depression."). Aside from noting her score, Plaintiff makes no other argument related to this score, other than the fact that

---

[3] *See* https://.apa.org/pi/about/publications/caregivers/practicesettings/assessment/tools/patient-health (last visited September 25, 2023).

[4] *See id.*

[5] *See* https://www.medi-stats.com/gad-7-phq-9 (last visited September 25, 2023).

she presumably believes the score had somehow undermined the RFC. But without more, the Court rejects this argument. Although the ALJ may not have specifically mentioned the score, the ALJ did consider all of the evidence and ultimately concluded that Ms. Birmingham suffered from "severe" depression. *See* TR. 12. As a result, the Court concludes that the score, and/or the ALJ's failure to specifically address it, does not undermine the RFC.

### 3. The PCL-5 Score

The PCL-5 is a 20-item self-report measure that assesses the 20 DSM-V symptoms of PTSD and takes approximately 5-10 minutes to complete.[6] A PCL-5 score between 31-33 is indicative of probable PTSD.[7] Here, Plaintiff states: "The plaintiff's score . . . was 33 on the PCL-5 (indicating a provisional diagnoses of PTSD.)." (ECF No. 16:7). In actuality, the record that Plaintiff cites indicates a score of 38, rather than 33, and the clinician who made the notes stated that the score "indicat[ed] post-traumatic stress." (TR. 568). Although the ALJ failed to mention the score, he did find that Ms. Birmingham suffered from "severe" post-traumatic stress disorder. Plaintiff makes no argument that this score or her post-traumatic stress disorder somehow caused limitations which were inconsistent with the RFC. Under these circumstances, the Court finds that this score did not undermine the RFC and rejects Plaintiff's argument regarding the same.

---

[6] *See* https://www.ptsd.va.gov/professional/assessment/adult-sr/ptsd-checklist.asp (last visited September 25, 2023).

[7] *See id.*

### 4. The MoCA Score

Finally, Plaintiff points to the MoCA score assessed by Dr. Danaher which indicated "mild cognitive disorder." (ECF No. 16:7). Again, Ms. Birmingham offers no argument regarding how she believes this score had undermined the RFC. *See* ECF No. 16:7. The ALJ acknowledged the score and Dr. Danaher's findings which found that Plaintiff suffered from Major Depressive Disorder—Recurrent—Moderate Severity and Post-traumatic Stress Disorder. *See* TR. 414. The score and Dr. Danaher's findings were consistent with the ALJ's findings that Plaintiff suffered from "severe" depression and post-traumatic stress disorder. Plaintiff does not argue that the score, or any or Dr. Danaher's findings caused limitations which were inconsistent with the RFC. As a result, the Court rejects Plaintiff's argument regarding the same.

### C. Missed Days of Work

At the administrative hearing, Plaintiff's attorney asked the VE whether an individual would be able to maintain competitive employment if she would be absent from work at least twice a month and the VE answered "no." *See* TR. 64. Plaintiff maintains that "the record is clear that [she] missed too much work due to medical appointments [and] that the [her] mental health appointments have taken up much more than 1 missed day of work per week." (ECF No. 16:8). Ms. Birmingham then lists the number of medical appointments she has attended monthly from January 2018 through March 2021. See ECF No. 16:8-9. Plaintiff argues that she had 78 medical appointments during this time which, coupled with the VE's testimony, would preclude employment. (ECF No. 16:8-10). The Court disagrees.

13

An examination of the listed appointments, reveals that the vast majority of Plaintiff's medical visits are single counseling sessions or medication refill appointments. See TR. 404, 426, 430, 432, 434, 438, 442, 444, 446, 448, 450, 452, 454, 458, 460, 462, 464, 466, 468, 472, 474, 476, 478, 486, 489, 491, 493, 495, 497, 523, 537, 541, 545, 547, 549, 551, 553, 555, 557, 559, 561, 563, 565, 574, 599, 612, 638, 640, 669, 671, 673, 675, 677, 681, 683, 716, 717, 718, 719, 720, 721, 722, 723, 733, 737, 800, 802, 804, 806. "It is wholly unclear why single session counseling appointments or appointments with a primary care physician regarding medication refills would require Plaintiff to miss an entire day of work." *Bricker v. Kijakazi*, No. CIV-21-276-P, 2022 WL 852868, at *3 (W.D. Okla. Mar. 22, 2022). Plaintiff's argument "simply assume[s] that she would be required to miss an entire work day for her appointments, rather than recognizing that her work schedule could be adjusted around those appointments." *Ewing v. Astrue*, No. CIV-11-1200-C, 2012 WL 2450847, at *2 (W.D. Okla. June 27, 2012) (affirming ALJ's decision wherein he determined that the plaintiff's need for additional medical treatment would not preclude her from engaging in employment (citing *Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir. 2000)).

In any event, courts have repeatedly rejected similar arguments in Social Security appeals. *See Razo v. Colvin*, 663 F. App'x 710, 717 (10th Cir. 2016) (finding the ALJ did not err by failing to include absenteeism due to medical appointments in the RFC, explaining that medical appointments do not "mean he could not perform work on a regular and continuing basis. To be able to perform work on a 'regular and continuing basis,' *see* 20 C.F.R. § 404.1545(b) & (c), one need not keep a particular work schedule.

14

Rather, work 'on a regular and continuing basis ... means 8 hours a day, for 5 days a week, or an equivalent work schedule.' ") (quoting SSR 96–8p, 1996 WL 374184, at *1, 2 (1996)); *Barnett*, 231 F.3d at 691 (finding the ALJ did not err by failing to consider the plaintiff's absenteeism, such evidence was presented at the hearing and argument assumed an entire day would be missed for each appointment); *S.D. v. Saul*, No. 19-4048-SAC, 2020 WL 774098, at *8 (D. Kan. Feb. 18, 2020) ("The court has examined the record and acknowledges plaintiff's many medical appointments.... [M]any of the appointments appear to be of the type which could be scheduled to accommodate work; for instance, diabetes followups, medication refills or reviews, and post-op checks.... Upon review, the court concludes that the ALJ did not commit an error in the step four analysis by failing to properly consider the evidence of plaintiff's medical appointments."). As in the aforementioned cases, the Court rejects Plaintiff's argument regarding the potential missed work due to medical appointments.

## VI.   THE CONSISTENCY ANALYSIS IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Finally, Plaintiff contends that the ALJ erred in considering the consistency of her subjective allegations in determining the RFC, which rendered the ALJ's findings lacking in substantial evidence. (ECF No. 16:10-14). The Court disagrees.

### A.   ALJ's Duty to Evaluate Plaintiff's Subjective Allegations

Social Security Ruling 16-3p provides a two-step framework for the ALJ to evaluate a claimant's subjective allegations. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). First, the ALJ must make a threshold determination regarding "whether there is an underlying medically determinable physical or mental impairment(s) that could

15

reasonably be expected to produce an individual's symptoms, such as pain." *Id.*, at *2. Second, the ALJ will evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit an individual's ability to perform work-related activities. *Id.* At this second step, the ALJ will examine the objective medical evidence, the claimant's statements regarding his symptoms, information from medical sources, and "any other relevant evidence" in the record. *Id.*, at *4. SSR 16-3p also directs the ALJ to consider the following seven factors in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms:

- Daily activities;
- The location, duration, frequency, and intensity of pain or other symptoms;
- Factors that precipitate and aggravate the symptoms;
- The type, dosage, effectiveness, and side effects of any medication;
- Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
- Any measures other than treatment a claimant has used to relieve pain or other symptoms; and
- Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*, at *7. Finally, in evaluating a claimant's subjective statements, the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review. *Id.*, at *9.

### B.    No Error in the ALJ's Review of Plaintiff's Subjective Allegations

This Court's review of the ALJ's consideration of Plaintiff's subjective reports is guided by two principles. First, such "determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Second, "findings as to [subjective reports] should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (additional alteration omitted).

According to Ms. Birmingham, the ALJ's evaluation of her subjective allegations is "based on a selective determination of the facts" (ECF No. 16:13). Specifically, Plaintiff contends that the ALJ failed to consider Plaintiff's:

- Attempts to find and try treatment;
- Regular contact with a doctor;
- Psychological disorders combined with her physical issues;
- Daily activities; and
- Medications and related side effects.

(ECF No. 16:12). The Court disagrees.

In evaluating Plaintiff's subjective allegations, the ALJ ultimately concluded that Plaintiff's reported limitations were not entirely consistent with the medical and other evidence of record. (TR. 17). With detailed discussion of and citation to the record, the ALJ noted occasions when Plaintiff was compliant with her medication, when Plaintiff was not compliant in taking her medication, when Plaintiff complained her medications were

17

not working, and times when she had just run out of medication. (TR. 19, 20, 23, 24). See Steven v. Kijakazi, No. 20-cv-00364-SH, 2022 WL 489319, at *4 (N.D. Okla. Feb. 17, 2022) (explaining it was appropriate for ALJ to consider the plaintiff's non-compliance with treatment plan in evaluating consistency of his subjective reports (citing SSR 16-3p, 2017 WL 5180304)); Wright v. Saul, No. CIV-18-822-BMJ, 2019 WL 4145235, at *9 (W.D. Okla. Aug. 30, 2019) (affirming ALJ's conclusion that "Plaintiff's noncompliance with treatment weakened the credibility of her allegations." (quotations and alterations omitted) (citing SSR 16-3p, 2017 WL 5180304, at *9 ("[I]f the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.")).

The ALJ also thoroughly discussed Plaintiff's many doctor's visits—both for physical ailments and Plaintiff's mental health. (TR. 17-23). The ALJ discussed Plaintiff's daily activities, noting that a typical day for Plaintiff would be to sleep as long as she could, followed by breakfast, watching television, taking her medication and sleeping some more. (TR. 16). Finally, the ALJ discussed Plaintiff's attempts (sometimes successful) to find employment throughout the disability period. (TR. 20, 23). In his evaluation, the ALJ provided evidentiary support in the form of specific page citations to the record, clearly articulated for this Court's review.

Based on the forgoing, the Court: (1) finds no error in the ALJ's evaluation of Ms. Birmingham's subjective allegations and, therefore, (2) concludes that substantial

evidence supports the ALJ's evaluation of Plaintiff's reported symptoms and the extent to which they limited Plaintiff's ability to do work-related activity.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on September 29, 2023.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE